J-S21020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MUNFORD | : | |
| | : | |
| Appellant | : | No. 2115 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001016-2022

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 4, 2024**

Appellant David Munford appeals from the judgment of sentence imposed following his bench trial convictions for robbery and related offenses. Appellant challenges the sufficiency and weight of the evidence, the trial judge's failure to recuse, and the trial court's denial of his motion for a mistrial. We affirm.

The trial court summarized the underlying facts of this matter as follows:

> On August 31, 2020, police responded to the area of 2300 Edgely Street in the City and County of Philadelphia due to a report for a man shot on the highway.  Upon arriving, Police Officers Heeney and Grant found a man, later identified as Mr. Quadri Bello, age 17, unresponsive.  Officers transported him to Temple University Hospital where he was pronounced dead.  Doctor Victoria Sororkin of the Philadelphia Medical Examiner's Office conducted an autopsy on Mr. Quadri Bello's body and determined that the cause of death was one gunshot wound to the right upper back and the manner of death was homicide.  Notes of Testimony, ("N.T.") 5/1/23, at 32-34; 5/2/23, at 17; [Exhibit] C-99.

Myelle Palmero and Cheyann Fields testified for the Commonwealth about their role in these events from August 30-31, 2020. Their testimony was substantially the same. . . . Palmero and Fields [who were fourteen years old at that time] met Mr. Bello and his friend, Melvin "Mellie" Kaloko in Southwest Philadelphia shortly before the murder of Mr. Bello. They exchanged phone numbers. Bello and Kalako went to Fields's grandmother's house in the early evening of August 30 and picked up Palmero and Fields. The four drove around the city, stopping at stores to buy candy and various things. Mr. Kaloko drove his white Ford Fusion with Bello in the front seat and the two young women in the back. The foursome drove to pick up another young woman, Inayha Sparks, who lived in North Philadelphia. When they picked her up, she entered the back of the car. It was at this point that Mr. Bello and Mr. Kaloko decided that they did not want to drive the young women around anymore and they told the females that Ms. Sparks's house would be the last stop for the evening. Mr. Kaloko told them that his car was "broken", and they would have to get out of the car. N.T., 5/1/23, at 42, 44-48; N.T., 5/2/23, at 25, 27-29.

Mr. Bello and Mr. Kaloko exited the car. While they were outside the car, the females were angry and decided all together that they would set up a robbery of the two young men. Ms. Palmero called her friend "Nana" and asked him if he was willing to meet them and rob the boys she was with. After some discussion, Nana declined. Ms. Fields called her friend Antwyne Brunson. Ms. Fields asked Brunson if "y'all trying to hit this lick," meaning "do you want to rob" the two boys. After some discussion about what items the boys had worth robbing, Brunson asked Ms. Fields where she was and Fields sent him her location through her phone. N.T., 5/1/23, at 48-49, 52-54; [N.T.,] 5/2/23, at 29, 30-33.

Mr. Bello and Mr. Kaloko drove Palmero, Fields and Sparks to the corner of 23rd and Edgely Streets. As Palmero exited the car, she took a cell phone belonging to Mr. Kaloko and gave it to Fields. The three girls met up with Antwyne Brunson and [Appellant] at 23rd and Edgely Streets. Brunson and [Appellant] were already at the location when the girls arrived. The group of five, Fields, Sparks, Palmero, Brunson and [Appellant] spent time together, smoking marijuana and passing around a firearm that was brought by Brunson or [Appellant]. They took a photograph of themselves and the firearm. As time passed, Mr. Kaloko's phone rang. The caller ID on the phone indicated the call was from Mr. Bello's phone. Ms. Palmero answered the phone and told the boys

to come back to the park to retrieve the phone. N.T., 5/1/23, at 54-55, 59-60; [N.T.,] 5/2/23, at 36, 38-40, 98, 102. Mr. Bello and Mr. Kaloko came back to the park to retrieve the cell phone. When they arrived, Mr. Bello became involved in an "aggressive" altercation with [Appellant]. Palmero saw Antwyne [Brunson] walk away and [Appellant] stayed. She began to walk away when she heard a gunshot. She turned back and saw [Appellant] running. Antwyne Brunson took Mr. Kaloko's car. Later that evening, Fields spoke to Appellant and asked him if "he shot him," meaning Mr. Bello[,] and although at first, Appellant said no, he then said, "I think I did hit him." About a week after the shooting, Appellant called Palmero through Instagram Facetime. He told her "I know where Inayha and Cheyann at." Palmero explained that Appellant wanted to "set up" the two other girls "to die." N.T., 5/1/23, at 63-64, 67, 74-75, 128; [N.T.,] 5/2/23, at 39-41.

Both Palmero and Fields negotiated plea deals with the Commonwealth in exchange for their testimony at trial. Ms. Fields gave a statement to the Assistant District Attorney around the same time as her preliminary hearing. She was permitted to have her case handled in [Juvenile] Court where she made an admission to the charges of robbery and conspiracy. She was sent to the Youth Detention Center at Danville for a minimum of two years and would remain on probation until she turns 21. Ms. Palmero entered an open guilty plea to robbery and conspiracy in exchange for her testimony. She had been incarcerated for more than [two] years at the time of her plea but had not been sentenced as of the date of her testimony.

Although Appellant presented an alibi defense[,] the court rejected the alibi testimony of Appellant's mother, who claimed Appellant was in the house on the night in question. Her testimony was incredible given the errors made in the date she informed her son's lawyer about her knowledge of his whereabouts from years prior. There were also other incredible pieces of information she provided. [Therefore,] the alibi was ultimately rejected [by the trial court].

Trial Ct. Op., 12/21/23, at 1-5 (footnote omitted and some formatting altered).

At trial, the Commonwealth also called Appellant's co-conspirator, Mr. Brunson, as a witness. *See* N.T. Trial, 5/1/23, at 5. Mr. Brunson agreed that he pled guilty to several charges, including conspiracy and murder. *Id.* at 6. Although Mr. Brunson confirmed that he did not make any changes to the factual basis underlying his plea, he stated that he did not want to incriminate any of his co-defendants and had only pled guilty for his part in the crime. *Id.* at 7, 11.

The following day, Appellant moved for a mistrial in which he argued that the Commonwealth committed prosecutorial misconduct by calling Mr. Brunson as a witness and for failing to provide the transcript of Mr. Brunson's guilty plea colloquy to the defense, which resulted in prejudice. *See* Mot. for Mistrial, 5/2/23, at 2-4; N.T., 5/2/23, at 6. The trial court noted that Appellant did not object to Mr. Brunson's testimony, then stated that the motion was premature because the Commonwealth had not finished presenting its case. *Id.* at 7-8. Appellant agreed to that and stated that he was "willing to pause it for now." *Id.* at 8.

On the final day of trial, the Commonwealth admitted the transcript from Mr. Brunson's plea hearing as an exhibit. N.T., 5/17/23, at 6. Appellant renewed his motion for mistrial and indicted that the Commonwealth committed an intentional discovery violation by failing to provide Mr. Brunson's guilty plea transcript to the defense. *Id.* at 11. Ultimately, the trial court concluded that the Commonwealth's failure to provide the transcript was not "a discovery violation nor [was] it prosecutorial misconduct," as Appellant

- 4 -

was aware that the Commonwealth was calling Mr. Brunson as a witness, "[Appellant] knew what [Mr. Brunson] was going to say," and that "everything that was pled to was in the discovery." *Id.* 14-16. Therefore, the trial court denied Appellant's motion. *Id.* at 16.

At the conclusion of the waiver trial, the trial court convicted Appellant of two counts of robbery, and one count each of third-degree murder, conspiracy, and a violation of the Uniform Firearms Act (VUFA).[1] On August 11, 2023, the trial court sentenced Appellant to an aggregate term of twenty to forty years' incarceration.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's issues, but concluding that Appellant had waived multiple claims for appeal. *See* Trial Ct. Op. at 7-13. Specifically, the trial court noted that Appellant did not preserve a weight claim at sentencing or in a post-sentence motion. *Id.* at 7. Additionally, although Appellant included a sufficiency challenge in his Rule 1925(b) statement, he failed to specify which convictions or elements he intended to challenge on appeal. *Id.* at 10-11. Finally, the trial court concluded that because Appellant did not object to the trial court presiding over his trial, that claim was likewise waived for appeal. *Id.* at 12-13.

On appeal, Appellant raises the following issues:

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(i), 2502(c), 903, and 6110.2(a), respectively.

1. Was the verdict against the weight of the evidence?

2. Was the evidence sufficient to establish Appellant's guilt beyond a reasonable doubt for murder of the third-degree, criminal conspiracy, two (2) counts of robbery, and firearms offenses?

3. Did the Court err by presiding over Appellant's bench trial after taking the guilty plea of co-Appellant Antwyne Brunson, which, by definition, required the [trial c]ourt to accept as true all facts introduced by the Commonwealth, including the implication of Appellant as the shooter before the trial even began?

4. Did the [the trial c]ourt err in not granting Appellant's motion for mistrial when the Commonwealth improperly admitted evidence into trial (*i.e.*, the co-Appellant's guilty plea transcript] that had not been provided to the defense prior to the beginning of trial?

Appellant's Brief at 6 (some formatting altered).

## Waived Claims

Initially, we agree with the trial court that Appellant failed to preserve his first three claims. **See** Trial Ct. Op. at 7-13. Although Appellant was convicted of multiple crimes, Appellant's sufficiency claim in his Rule 1925(b) statement did not specify which elements or even which conviction he sought to challenge on appeal. **See Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) (reiterating that an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient and noting that "[s]uch specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt" (citation omitted)).

Further, the record confirms that Appellant did not preserve a weight-of-the-evidence claim before the trial court, accordingly he cannot raise it for the first time before this Court. Therefore, that issue is waived. **See** Pa.R.Crim.P. 607(A) (stating that a weight claim must be preserved before the trial court in a post-sentence motion, a written motion before sentencing, or orally prior to sentencing).

Finally, Appellant argues that the trial judge who accepted his co-defendant's plea should not have presided over his case, however, Appellant did not raise an objection at any point during his waiver colloquy or at trial. **See Lomas v. Kravitz**, 170 A.3d 380, 390 (Pa. 2017) (stating that "a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse[]" and "[i]f the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived" (citations omitted)). Therefore, that claim is waived.

In sum, we are constrained to conclude that Appellant waived his first three claims and no relief is due.[2] **See Garland**, 63 A.3d at 344; Pa.R.Crim.P. 607(A); **Lomas**, 170 A.3d at 390.

---

[2] Further, the trial court's decision to address the weight and sufficiency of the evidence does not affect our finding of waiver. **See Commonwealth v. Cannon**, 954 A.2d 1222, 1228 (Pa. Super. 2008) (reiterating that "when the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review" and stating that a vague Rule 1925(b) statement may result in waiver, even if the trial court correctly guesses the issues an appellant seeks to raise on appeal (citations and quotation marks omitted)).

**Motion for Mistrial**

In his remaining claim, Appellant argues that the trial court erred in denying his motion for a mistrial after the Commonwealth called Mr. Brunson as a witness at trial. Appellant's Brief at 17. Appellant notes that during his plea colloquy, Mr. Brunson "acknowledged a factual basis for his guilty plea to third-degree murder, criminal conspiracy, robbery, and related charges that implicated Appellant as a co-conspirator and the shooter[.]" *Id.* at 18 (citation omitted). Appellant argues that his "motion for a mistrial was justified because the facts to which Mr. Brunson pled guilty were only available to the Commonwealth (who crafted the plea facts and led the guilty plea hearing) and Judge Anhalt (who took Mr. Brunson's plea)." *Id.* (emphasis omitted). Further, Appellant claims that "[a]t no point prior to Mr. Brunson testifying on [May 1, 2023] was defense counsel ever provided the guilty plea transcript, which named Appellant as the shooter." *Id.* Therefore, Appellant concludes that the trial court should have granted his motion for a mistrial. *Id.* at 18-19.

"[A] mistrial is an extreme remedy only warranted when the prejudice to the movant cannot be ameliorated to ensure a fair trial." *Commonwealth v. Risoldi*, 238 A.3d 434, 458 (Pa. Super. 2020). A trial court's denial of a party's motion for a mistrial will not be disturbed absent an abuse of discretion. *See Commonwealth v. Wilson*, 273 A.3d 13, 21 (Pa. Super. 2022). More than a mere error of judgment, "an abuse of discretion will be found when the law is overridden or misapplied, or the judgment exercised is

manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Saez***, 225 A.3d 169, 177 (Pa. Super. 2019) (citation and quotation marks omitted).

Further, when judges serve as the finder of fact, the law presumes they will disregard inadmissible and/or prejudicial evidence. ***See, e.g., Commonwealth v. Fears***, 836 A.2d 52, 71 n.19 (Pa. 2003) (holding that "a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence" (citation omitted)); ***In re J.H.***, 737 A.2d 275, 279 (Pa. Super. 1999) (noting that in a proceeding where the judge is the fact finder, he or she is presumed to consider evidence for its proper purpose and "is equipped, through training and experience, to assess the competency and relevance of proffered evidence and to disregard that which is prejudicial" (citation omitted)).

Here, the trial court addressed Appellant's claim as follows:

On May 1, 2023, the Commonwealth called the co-conspirator, [Mr.] Brunson to testify in Appellant's case. Appellant knew [Mr. Brunson would be called as a witness when the court asked him about his decision to agree to have a bench trial. N.T., 5/1/23, at 5, 10-11. When Mr. Brunson testified, he agreed that he pled guilty to several charges, including conspiracy, third-degree murder, robbery and gun offenses. He agreed that he did not make any changes to the facts read at his guilty plea colloquy. He indicated he did not want to incriminate any of his codefendants and refused to answer some questions asked of him by the assistant district attorney. He did agree, however, that he did not make any changes to any of the facts read out loud at his guilty plea and he agreed that he was given an opportunity to do so. Mr. Brunson agreed that "the girls," Ms. Fields, Ms. Sparks, and Ms. Palmero texted him that night. Mr. Brunson told the cops that

he did not shoot anybody on the night in question. N.T., 5/1/23, at 138-141.

The following day, counsel filed a motion for a mistrial. The request for the mistrial was based on the fact that facts were put on the record at the guilty plea for Mr. Brunson that only the court and . . . the prosecutor knew. The actual facts were not put on the record at that time, for [Appellant] "in any way, shape or form," according to counsel. N.T., 5/2/23, at 6-7. The court agreed with counsel at that point, indicating that his motion for a mistrial was premature since the Commonwealth had not rested its case, and the prosecutor was free to continue to try his case and enter the appropriate evidence into the record to "tie up" this testimony for the record in Appellant's case. *Id.* at 7-8. In addition, counsel did not object at the time Mr. Brunson testified. [*See*] Pa.R.A.P 302(a) (giving the court the opportunity to correct any errors at the time they may have happened).

Nevertheless, the court **agreed with counsel for Appellant** that his motion for a mistrial would be considered if, at the end of the trial, the prosecutor could not "tie up" the facts to which Mr. Brunson had pled guilty, then the court would reconsider his motion for a mistrial. Counsel for Appellant agreed. *Id.* at 14-15. He stated "if [the Commonwealth] does . . . tie up the Mr. Brunson testimony with more evidence, making his testimony relevant, I will withdraw the motion." *Id.* Counsel agreed to proceeding this way and [the Commonwealth] entered into evidence the transcript from Mr. Brunson's guilty plea. N.T., 5/17/23, at 6; Commonwealth exhibit 129.

Counsel for Appellant again requested a mistrial after the admission of the transcript from the guilty plea, this time, on the fact that the transcript was not given to counsel prior to trial, even after agreeing . . . that this would be an appropriate way to handle this issue. On May 2, 2023, counsel for Appellant again indicated that he would not be objecting to the transcript of the guilty plea being entered into evidence. He agreed to a continuance to enter the actual sworn testimony from Mr. Brunson. N.T., 5/2/23, at 140. The court indicated it would order Mr. Brunson brought into court should counsel for Appellant require more cross-examination based upon the transcript from the guilty plea. *Id.* at 142. No such request was made. On May 17, [2023,] counsel for Appellant indicated that despite the fact that he agreed (two times) that entering the transcript from Brunson's plea would address the issues he raised in his first mistrial motion and after the assistant

- 10 -

district attorney did exactly what defense counsel feared would not be done, counsel again raised the issue citing a discovery violation and prosecutorial misconduct. N.T., 5/2/23, at 14-15; N.T., 5/17/23, at 8-12.

The trial court is in the best position to assess the effect of an allegedly prejudicial issue, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. ***Commonwealth v. Robinson***, 670 A.2d 616, 621 (Pa. 1995). A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. ***Commonwealth v. Spotz***, 716 A.2d 580, 592 (Pa. 1998); ***Robinson***, 670 A.2d at 621. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice. ***Spotz***, 716 A.2d at 592-93; ***Commonwealth v. Lawson***, 546 A.2d 589, 594 (Pa. 1988); ***Commonwealth v. Simpson***, 754 A.2d 1264, 1272 (Pa. 2000). Moreover, it has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict. ***Commonwealth v. Brown***, 486 A.2d 441 (Pa. Super. 1985); ***Commonwealth. v. Irwin***, 579 A.2d 955, 957 (Pa. Super. 1990).

It is more than clear on this record, that there was no need for a mistrial given that counsel agreed that entering into evidence the transcript from the guilty plea of Mr. Brunson resolved the issue of the whether Appellant's trial record included the details to which Brunson pled guilty. Those facts were contained in all the previous discovery given to Appellant's counsel long before this trial. Counsel was not shocked by the testimony given, in fact it was known to him that Brunson pled guilty and he knew the Commonwealth's theory of the case based upon the discovery and based upon the statements given by [Ms.] Fields and [Ms.] Palmero.

Given the sworn testimony of Ms. Fields and Ms. Palmero, Appellant was not prejudiced by anything that was contained in [Mr.] Brunson's guilty plea and a mistrial was unwarranted. The court focused its decision on the persuasive testimony of two witnesses who participated in this crime and accepted their own responsibility for the results. Mr. Brunson's testimony was cumulative at best.

> Even if it was error to allow the guilty plea into evidence, the error was harmless, given the overwhelming evidence of Appellant's guilt. *Interest of J.M.G.*, [229 A.3d 571, 580] (Pa. 2020).

Trial Ct. Op. at 14-17 (some formatting altered, emphasis in original).

Following our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's motion for a mistrial. *See Wilson*, 273 A.3d at 21. As noted by the trial court, Appellant's conviction was based on testimony from Ms. Fields and Ms. Palmero, who described the events that occurred prior to and after the victim's murder, including Appellant's admission that he believed that he had hit the victim when Appellant fired his gun. *See* Trial Ct. Op. at 11-12; N.T., 5/2/23, at 28-46. Further, to the extent Appellant claims that Mr. Brunson's testimony was prejudicial, we reiterate that trial judges, sitting as fact finders, are presumed to ignore prejudicial evidence in reaching a verdict. *See Fears*, 836 A.2d at 71 n.19 (holding that "a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence" (citation omitted)); *J.H.*, 737 A.2d at 279.

Finally, Appellant was aware that Mr. Brunson had pled guilty, *see* N.T., 5/17/23, at 14-15, and Appellant knew the Commonwealth's theory of the case based upon the discovery materials, which included the statements from by Ms. Fields and Ms. Palmero which implicated Appellant as the shooter. *See id.* at 16. Therefore, we cannot conclude that the unavoidable effect was to deprive Appellant of a fair trial. *See Spotz*, 716 A.2d at 592. Under these

circumstances, we agree with the trial court that a mistrial was unwarranted and that Appellant is not entitled to relief. For these reasons, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/4/2024